# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Vincent A. De Luna,

    Plaintiff

v.

Sunrise Hospital and Medical Center, LLC,

    Defendant

Case No.: 2:17-cv-01052-JAD-VCF

**Order Granting Summary Judgment and Closing Case**

[ECF Nos. 26, 30]

    Plaintiff Vincent De Luna is an over-40-years-old, Filipino man, who was diagnosed with depression-and-anxiety disorder. He used to work for defendant Sunrise Hospital and Medical Center, LLC, but was fired for his poor attendance. De Luna sues Sunrise for racial, disability, and age discrimination, and for wrongful termination in violation of public policy and in breach of a purported employment contract.[1] Sunrise moves for summary judgment on all of De Luna's claims.[2] After considering the parties' arguments and reviewing the record, I find that this case is borderline—if not, actually—frivolous, so I grant Sunrise's motion and close this case.

## Background

    Sunrise has an attendance-and-tardiness policy that was in effect while De Luna was employed there.[3] The policy allows for progressive discipline depending on an employee's tardiness within a rolling 12-month period.[4] Five tardies in a 12-month period results in a coaching session, six is a written warning, seven is a second written warning, eight is a two-day suspension without pay, and nine is a for-cause termination.[5] If an employee is particularly

---

[1] ECF No. 1.

[2] ECF No. 26.

[3] ECF No. 26-6.

[4] *Id.* at 3.

[5] *Id.*

1

unpunctual, levels of discipline may be skipped.[6] De Luna was tardy at least 24 times in less than 11 months, and he was fired.[7] He claims that his termination was discriminatory.

## Discussion

### A. Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[9] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[10]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[11] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[12]

---

[6] *Id.*

[7] ECF Nos. 26-8, 26-10, 26-11. There is some evidence that De Luna was actually late 120 times within a single 12-month period, ECF No. 26-13 at 2, but he was disciplined for only 24 of them.

[8] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[9] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[10] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[12] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

**B.    De Luna can't show that his disability was a motivating factor in his termination.**

De Luna's first and fourth causes of action are for "Discrimination on the Basis of Disability" and "Disparate Treatment on the Basis of Disability," respectively.[13] I construe them as a single disability-discrimination claim in violation of the Americans with Disabilities Act (ADA). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability.[14] To satisfy the third element, the employee must show that his disability was a motivating factor in his employer's decision, even if it wasn't the only factor.[15]

Sunrise argues that De Luna is unable to show that his disability was a motivating factor in his termination because it didn't even know that De Luna was disabled.[16] De Luna responds that Sunrise did, in fact, know about his disability because he told Sunrise about it when he took medical leave in 2006, and, many years later, Sunrise adjusted his schedule as an accommodation for his disability.[17]

Although the evidence does show that De Luna was diagnosed with his disability in 2006, it does very little to show that Sunrise knew about it. Sunrise offers a doctor's note from De Luna's physician, dated November 30, 2006, that merely says that De Luna may return to work three days later with no work restrictions—it doesn't mention De Luna's disability.[18] De Luna offers several doctors' notes from 2005 and 2006 that discuss his anxiety and depression diagnoses, but there is no indication that these notes were shared with Sunrise. De Luna includes

---

[13] ECF No. 1 at 5–6.

[14] *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

[15] *See Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005).

[16] ECF No. 26 at 7–10.

[17] ECF No. 27 at 2–3, 6–7.

[18] ECF No. 26-5 at 2.

3

a letter from his physician who certifies that De Luna took medical leave in 2006 for anxiety-and-depression disorder.[19] But the letter is dated January 13, 2017, and doesn't show that Sunrise knew of De Luna's condition before he was terminated.[20] The only piece of evidence showing that Sunrise knew about De Luna's disorder is De Luna's own declaration that he told Sunrise about it.[21] This evidence is thin at best, nevertheless I must draw all reasonable inferences in De Luna's favor, so I must find that it's sufficient to show that Sunrise knew about his condition and create a genuine issue of fact on that point.

Although the evidence does allow a reasonable jury to infer that Sunrise knew about De Luna's disorder, it doesn't show that the disorder was a motivating factor in his termination. The record does show that De Luna had perennial attendance problems and avoided termination far longer than the company's policy required. Sunrise discusses De Luna's attendance infractions from October 15, 2013, onward.[22] But because Sunrise's attendance policy revolves around a rolling 12-month period, I carve out the five infractions from 2013 and consider only the attendance violations from March 27, 2015, to February 4, 2016—they are numerous.

On April 8, 2015, De Luna received a written warning for his poor attendance.[23] During the preceding two-week period, De Luna was late on eight days: March 27–30, April 2, and April 4–6.[24] That warning informed De Luna that "[a]ny further occurrence will result in progressive disciplinary action up to and including termination."[25] De Luna signed that warning.[26] Two days later, De Luna requested that his schedule be changed from

---

[19] ECF No. 27-2 at 2.

[20] *Id.*

[21] ECF No. 27-1 at 2, ¶ 7.

[22] ECF No. 26 at 4.

[23] ECF No. 26-8.

[24] *Id.*

[25] *Id.*

[26] *Id.*

4

Friday/Saturday/Sunday/Monday to Tuesday/Thursday/Saturday/Sunday.[27] He gave no reason for this request,[28] but Sunrise mostly accommodated it and let him work on Monday, Thursday, Saturday, and Sunday.[29]

De Luna was disciplined again six months later for attendance violations.[30] He was tardy 10 times from September to October: September 28, October 1, October 8, October 10, October 12, October 15, October 17, October 22, October 26, and October 29.[31] He was suspended for two days without pay for his lack of punctuality,[32] and, although De Luna did not receive a final written warning before his suspension, the attendance policy allowed Sunrise to skip steps in the progressive-discipline tiers for particularly egregious offenders.[33] The suspension notice once again reminded De Luna that he may be terminated for future attendance issues, and he signed it.[34]

De Luna was tardy six more times from January to February 2016: January 14, January 24, January 28, January 30, January 31, and February 4.[35] On February 4, 2016, De Luna emailed Margaret Russitano, requesting another change in his schedule.[36] He asked to have his scheduled start time changed from 7:30 a.m. to 8:30 a.m. because his sixth child was born, his mother moved in with him, and he had spread himself too thin.[37] De Luna did not cite his

---

[27] ECF No. 26-9.

[28] *Id.*

[29] ECF No. 26-4 at 14 (96:21–22 of the transcript).

[30] ECF No. 26-10 at 2.

[31] *Id.*

[32] *Id.*

[33] ECF No. 26-8 at 4.

[34] ECF No. 26-11 at 2.

[35] *Id.*

[36] ECF No. 26-12.

[37] *Id.*

5

depression or anxiety as reasons for his requested accommodation.[38] Instead of adjusting De Luna's schedule a second time, Sunrise fired him on February 8, 2016.[39] De Luna told Russitano that he had been tardy because of traffic, fatigue, difficulty sleeping from spreading himself too thin, a change in the weather or "any combination of these factors."[40] Not once did he cite his disability as a reason for his tardiness.

Even if De Luna told Sunrise about his diagnosis back in 2006, there is no indication that it played a role in his termination ten years later. De Luna had many chances to correct his attendance and was warned repeatedly that he would be fired if he failed to do so. He asked for scheduling accommodations, but his medical condition was never a stated reason (when he gave one) for his request. So, I find that De Luna has failed to show that his anxiety-and-depression disorder was a motivating factor in his termination after he was tardy at least 24 times in 11 months. Because De Luna can't satisfy this causation element, Sunrise is entitled to summary judgment on his disability-discrimination claim.

**C.     De Luna can't show that he was performing his job satisfactorily.**

Like his redundant disability-discrimination claims, De Luna brings redundant race-discrimination[41] and age-discrimination claims.[42] I construe these as single claims of race and age discrimination. To present a prima facie case of race discrimination, De Luna must show that: (1) he is a member of a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.[43] Likewise, to present a prima facie age-discrimination case, De Luna must show that he was: (1) at least 40 years old;

---

[38] *Id.*

[39] ECF No. 26-11.

[40] ECF No. 26-13 at 2.

[41] ECF No. 1 (second and fifth causes of action).

[42] *Id.* (third and sixth causes of action).

[43] *Godwin v. Hunt Wesson*, 150 F.3d 1217, 1220 (9th Cir. 1998).

(2) performing his job satisfactorily; (3) discharged; and (4) either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination.[44]

Sunrise argues that it is entitled to summary judgment on both of these claims because De Luna cannot show that he was performing his job satisfactorily in light of his poor attendance.[45] Although De Luna doesn't dispute this, he attaches a performance evaluation, two pride-recognition forms, and a handful of awards recognizing him for helping out around the hospital.[46] The performance evaluation does not help De Luna's case. There's a handwritten and initialed note at the bottom of it that says "* Took a closer look and Vincent has 4 tardies in January 2016. This could mean possible job termination. Vincent aware of situation. We spoke with Margaret our director. I'm writing further instructions."[47]

The two pride-recognition forms are from 2012, and, in any event, don't mention his attendance.[48] And the awards are not dated, so there's no indication that he received them around the time he was fired; plus, none of them are for his attendance.[49] De Luna simply fails to present any evidence that he was performing his job—attendance included—satisfactorily. So, I grant summary judgment for Eastridge on De Luna's age- and race-discrimination claims, too.

**D.  De Luna can't show that he had an employment contract.**

De Luna's final claim is for "Wrongful Termination of Employment," but there are allegations of an express oral and written employment contract and that he was terminated in

---

[44] *Diaz v. Eagle Produce, L.P.*, 521 F.3d 1201, 1207 (9th Cir. 2008).

[45] ECF No. 26 at 12, 14.

[46] ECF No. 27-4.

[47] *Id.* at 4.

[48] *Id.* at 5–6.

[49] *Id.* at 7–17.

7

violation of public policy.[50]  This claim is best construed as separate claims for breach of employment contract and wrongful termination in violation of public policy.

Sunrise argues that it is entitled to summary judgment because there is no evidence of an employment contract.[51]  Nevada employees are presumed to be at will, and an employer can discharge an at-will employee with or without cause, as long as the dismissal doesn't offend Nevada's public policy.[52]  Sunrise points out that there is no evidence to support the allegations in De Luna's complaint that "he had a valid contract of employment that was both oral and written that was contained in documents including an employee handbook, letters, memos, regulations, policies, practice or procedure utilized by Sunrise."[53]  De Luna failed to produce any of those documents to support his claim, and he seems to have abandoned this claim anyway because he failed to respond to Sunrise's argument in his opposition.  Because De Luna has failed to show that he had an employment contract, I grant summary judgment for Sunrise on De Luna's breach-of-employment-contract claim.

**E.     De Luna can't show that he was terminated in violation of public policy.**

Finally, De Luna claims that he was terminated in violation of public policy because he was fired on the bases of his race, age, and disability.[54]  Sunrise argues that summary judgment is appropriate because Nevada law doesn't allow a wrongful-termination claim to be based on unlawful discrimination because comprehensive statutory remedies already exist.[55]  De Luna

---

[50] ECF No. 1 at 8–9.

[51] ECF No. 26 at 15.

[52] *Southwest Gas Corp. v. Ahmad*, 668 P.2d 261, 262 (Nev. 1983).

[53] ECF No. 26 at 15 (citing ECF No. 1 at ¶ 102).

[54] ECF No. 1 at ¶¶ 104–106.

[55] *See Jones v. Reno Hilton Resort Corp.*, 889 F. Supp. 408, 412 n.4 (D. Nev. 1995); *Sands Regent v. Valgardson*, 777 P.2d 898, 899 (1989) (age discrimination); *Sproul v. Washoe Barton Med. Clinic*, 2011 WL 5190529, at *5 (D. Nev. Oct. 27, 2011) (disability discrimination); *de los Reyes v. Southwest Gas Corp.*, 2007 WL 2254717, at *5 (D. Nev. Aug. 3, 2007) (race discrimination).

8

also fails to respond to this argument. So, I find that Sunrise is entitled to summary judgment on this wrongful-termination-in-violation-of-public-policy claim as well.

### F. Motion for leave to file supplemental declaration

Two months after filing his response to Sunrise's motion for summary judgment and one month after Sunrise replied, De Luna filed a motion for leave to file a declaration from Samantha Gentry—a physical-therapist assistant who worked at Sunrise while he did—in an attempt to create a genuine issue of triable fact.[56] Under local rule 7-2(g), a party may only file supplemental evidence with the court's leave, which is granted only upon a showing of good cause.[57] Sunrise argues that De Luna has failed to demonstrate good cause.[58] I agree.

De Luna submits that he was unable to get Ms. Gentry's declaration along with his summary-judgment-motion opposition even if he exercised reasonable diligence.[59] But he doesn't make any effort to explain what prevented him from doing so. In fact, I am not convinced that he exercised due diligence in obtaining this declaration. De Luna offers her attendance records in support of his opposition, ostensibly to highlight her attendance issues as well.[60] He could have sought her declaration to explain her attendance record and any consequences of it then, but he didn't. So, I find that De Luna has failed to show good cause for allowing this supplemental declaration, and I deny his request for leave to file it.

### Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Sunrise's motion for summary judgment **[ECF No. 26] is GRANTED**.

IT IS FURTHER ORDERED that De Luna's motion for leave to file a supplemental declaration **[ECF No. 30] is DENIED.**

---

[56] ECF No. 30.

[57] L.R. 7-2(g).

[58] ECF No. 31.

[59] ECF No. 30.

[60] ECF No. 27-7.

1       The **Clerk of Court** is directed to **ENTER JUDGMENT** in favor of Sunrise and
2 **against De Luna and CLOSE THIS CASE**.

3       Dated: August 24, 2018

                                                      _____
                                                      U.S. District Judge Jennifer A. Dorsey